UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BANK OF COMMERCE, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 4:11CV428 JCH |
| ) | |
| THE BUSINESS BANK OF ST. LOUIS, ) | |
| ) | |
| Defendant(s). ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff Bank of Commerce's Motion Requesting Attorney Fees and Costs, filed October 20, 2011. (ECF No. 39). The motion is fully briefed and ready for disposition.

## **BACKGROUND**

On or before October 15, 2007, Defendant Business Bank of St. Louis made a loan (the "Loan") to Bridlewood Building Partners, LLC (the "Borrower"). On or about October 15, 2007, Defendant and Champion Bank ("Champion") executed a Participation Agreement in which Defendant, as the Originating Bank, sold a Participation Interest in the Loan to Champion, as the Participating Bank. For good and valuable consideration, Defendant sold an undivided seventy-four percent ownership interest in the Loan to Champion.

The Participation Agreement required Defendant to share fifty percent of the Borrower's loan payments with the Participating Bank within ten business days of Defendant's receipt of each of Borrower's loan payments, until Originating Bank's original principal balance was satisfied, at which time Participating Bank was to receive one hundred percent of the proceeds. The Participation Agreement further required Defendant to allow the Participating Bank to inspect the Originating

Bank's books, records, and documents relating to the Loan, and to provide the Participating Bank with copies of all records and documents that evidenced, secured, or supported the Loan. As relevant here, the Participation Agreement further contained the following provisions:

> 11. <u>Assignability; Right to Repurchase.</u> Without the prior written consent of Originating Bank, Participating Bank may not assign its obligation to fund disbursements or expenditures in connection with the Loan or sell, pledge or otherwise transfer its Participation in the Loan without first offering to Originating Bank the right to repurchase the Participation. Originating Bank shall have no obligation to repurchase the Participation under any circumstances. Participating Bank shall provide to Originating Bank a written agreement from a third party to purchase the Participation, and Originating Bank shall have fifteen (15) days from the receipt of such agreement to notify Participating Bank that Originating Bank will repurchase the Participation on the same terms as set out in such agreement. Participating Bank shall have the right, if Originating Bank does not notify Participating Bank that it is exercising its right to repurchase the Participation within such fifteen (15) day period, to assign or transfer the Participation to such third party.
>
> 14. <u>Attorney's Fees and Costs.</u> Each party to this Agreement shall pay its own attorneys' fees incurred in connection with the negotiation and execution of this Agreement. If any lawsuit or proceeding is brought by either party to enforce the terms of this Agreement, the unsuccessful party agrees to pay the prevailing party's court costs and reasonable attorneys' fees incurred in bringing or defending such action.
>
> 16. <u>Successors and Assigns.</u> This Agreement shall inure to the benefit of and be binding on the successors and permitted assigns of the parties hereto.

(Participation Agreement, attached to Plaintiff's Complaint as Exh. A, P. 4).

On or about April 30, 2010, the Missouri Division of Finance closed Champion, and the Federal Deposit Insurance Corporation ("FDIC-R") was named Receiver for Champion. On or about December 3, 2010, the FDIC-R transferred, granted, conveyed and assigned all of Champion's right, title and interest in the Participation Agreement to Plaintiff (the "Assignment Agreement"). The FDIC-R notified Defendant that Champion's interest in the Participation Agreement had been assigned to Plaintiff, and instructed Defendant to make payments to Plaintiff.

Plaintiff demanded that Defendant make payments to it, and provided Defendant with a copy of the Assignment Agreement. Defendant failed and refused to make any payments to Plaintiff, however, or to allow Plaintiff to inspect the loan documents. Plaintiff therefore filed its Complaint in this matter on March 9, 2011. (ECF No. 1). In Count I of its Complaint, Plaintiff asserted Defendant's failure and refusal to remit fifty percent of the loan payments to Plaintiff as the Participating Bank, and to allow Plaintiff to inspect and be provided with copies of documents relating to the Loan, constituted a material breach of the Participation Agreement. (Id., ¶¶ 25-41). Counts II and III asserted claims for Breach of Fiduciary Duty and Conversion. (Id., ¶¶ 42-68).

On March 31, 2011, Defendant filed its Answer, Affirmative Defenses, and Counterclaim. (ECF No. 8). In Count I of its Counterclaim, Defendant alleged it was entitled to money damages as the transfer, grant, conveyance and assignment of the Participation Interest to Plaintiff without first offering Defendant the right to repurchase the Participation Interest was a material breach of the Participation Agreement. (Id., PP. 11-12). In Count II, labeled Declaratory Judgment, Defendant requested that the Court require Plaintiff to disclose the price paid for the Participation Interest under the Assignment Agreement, and order that the Assignment Agreement be rescinded to allow Defendant the option to repurchase the Participation Interest pursuant to the terms of the Participation Agreement. (Id., PP. 12-13).

In an Order entered June 6, 2011, the Court dismissed Defendant's Counterclaim without prejudice, for failure to join the FDIC as a necessary party. (ECF No. 21). Although the Court granted Defendant until June 27, 2011, within which to file an Amended Counterclaim, Defendant declined to do so. (Id.).[1]

---

[1] In its Order, the Court stated as follows: "Should Defendant elect to assert the same allegations as put forth in its original Counterclaim, it must add the FDIC as a Defendant to said claims." (ECF No. 21, P. 2 n. 2). According to Defendant, it made a "business decision" not to join

Plaintiff then filed a Motion for Partial Summary Judgment on August 3, 2011, claiming it was entitled to judgment as a matter of law as to Defendant's liability on Count I of its Complaint for Breach of Contract. As relief, Plaintiff sought findings that (1) the Participation Agreement was valid and enforceable, (2) Plaintiff was the assignee, owner, and entity entitled to enforce the Participation Agreement, (3) Defendant had breached the Participation Agreement by failing to make payments, and failing to allow Plaintiff to inspect the Loan documents, (4) Plaintiff was entitled to receive the Loan payments, and to inspect the Loan documents, pursuant to the terms of the Participation Agreement, (5) Plaintiff was entitled to pre-judgment interest from and after December 3, 2010, to the date of final judgment herein, at the highest rate allowable by law, and (6) Plaintiff was entitled to its reasonable attorneys' fees and costs expended and incurred.

In its response to Plaintiff's motion, Defendant stated as follows:

> While Defendant continues to contest the FDIC's right and authority to transfer the Participation Agreement to Plaintiff pursuant to the terms of the Assignment Agreement between the FDIC and Plaintiff dated December 3, 2010 attached as Exhibit B to Plaintiff's Complaint ("Assignment Agreement") without first giving Defendant its first right of refusal set forth in paragraph 11 of the Participation Agreement, the Defendant has made the business decision not to name the FDIC as a party to this lawsuit as required by the Court's Order dated June 6, 2011. Accordingly the Defendant consents to Plaintiff's [Motion for Partial Summary Judgment] on all issues except pre-judgment interest and Plaintiff's request for over $25,000.00 in attorney's fees. Defendant, therefore, files its Response herein for the sole purpose of challenging Plaintiff's right to attorney fees and interest in this action.

(ECF No. 33, P. 1). In light of that assertion, the Court found Defendant had conceded the following: (1) that the Participation Agreement was valid and enforceable; (2) that Plaintiff was the assignee, owner, and entity entitled to enforce the Participation Agreement; (3) that Defendant had breached the Participation Agreement by failing to make payments, and failing to allow Plaintiff to

---

the FDIC in this action, because the FDIC regulates Defendant's business.

inspect the Loan documents; and (4) that Plaintiff was entitled to receive the Loan payments, and to inspect the Loan documents, pursuant to the terms of the Participation Agreement.

With respect to whether Plaintiff was entitled to pre-judgment interest from and after December 3, 2010, to the date of final judgment herein, at the highest rate allowable by law, and to its reasonable attorneys' fees and costs expended and incurred, the Court held as follows:

> [C]ontrary to Defendant's assertion, the question of whether the FDIC rightfully and legally transferred the Participation Agreement without first allowing Defendant its right of first refusal is not before the Court. Instead, the Court finds Defendant implicitly conceded the validity of the transfer pursuant to the Assignment Agreement, by admitting that Plaintiff is the assignee, owner, and entity entitled to enforce the Participation Agreement, to receive the Loan payments, and to inspect the Loan documents. Furthermore, the Court holds that with Count I of its Complaint Plaintiff clearly seeks to enforce the terms of the Participation Agreement itself, rather than any collateral document. (See, e.g., Compl., ¶ 36 ("Defendant's failure and refusal to remit fifty percent of the Loan payments to Plaintiff is a material breach of the Participation Agreement."); and ¶ 39 ("Defendant's failure and refusal to allow Plaintiff to inspect and failure and refusal to provide Plaintiff with copies of documents relating to the Loan is a material breach of the Participation Agreement.")).

(ECF No. 36, PP. 7-8 (footnote omitted)). The Court therefore held that Plaintiff was the prevailing party in a lawsuit brought to enforce the terms of the Participation Agreement, and thus was entitled to recover interest and reasonable attorneys' fees.

As stated above, Plaintiff filed the instant Motion Requesting Attorney Fees and Costs on October 20, 2011. (ECF No. 39). In its motion, Plaintiff requests an award of $35,957.40 in attorneys' fees, and $719.73 in costs. (Id.). Defendant objects both to the motion seeking attorneys' fees in its entirety[2], and to specific requests therein. (ECF No. 50).

---

[2] In its response, Defendant asserts attorneys' fees are not recoverable because, "[t]he current litigation seeks a declaration of the validity of the transfer to Bank of Commerce under the Assignment Agreement, not an enforcement of the terms of the Participation Agreement." (ECF No. 50, P. 4). As noted above, however, in light of Defendant's abandonment of its Counterclaim and concession to Plaintiff's Motion for Partial Summary Judgment, this Court held that the question of

## DISCUSSION

### I. Attorneys' Fees

As stated above, the Participation Agreement states in relevant part as follows:

> 14. <u>Attorney's Fees and Costs.</u>  Each party to this Agreement shall pay its own attorneys' fees incurred in connection with the negotiation and execution of this Agreement.  If any lawsuit or proceeding is brought by either party to enforce the terms of this Agreement, the unsuccessful party agrees to pay the prevailing party's court costs and reasonable attorneys' fees incurred in bringing or defending such action.

"The starting point for determining a reasonable attorney fee is to multiply the number of hours reasonably expended on the litigation by a reasonable hourly rate." <u>Copeland v. ABB, Inc.</u>, 2006 WL 2356140 at *1 (W.D. Mo. Aug. 15, 2006), citing <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983). "This figure is often referred to as the 'lodestar.'" <u>Id.</u> (citation omitted).  Under Eighth Circuit law, "[t]he onus is on the party seeking the award to provide evidence of the hours worked and the rate claimed," and "[t]he district court should exclude hours that were not reasonably expended." <u>Wheeler v. Missouri Highway & Transp. Com'n</u>, 348 F.3d 744, 754 (8th Cir. 2003), citing <u>Hensley</u>, 461 U.S. at 433, 434, <u>cert. denied</u>, 541 U.S. 1043 (2004).

In its response, Defendant does not dispute the reasonableness of the requested hourly rates. (<u>See</u> ECF No. 50).  Defendant does dispute the number of hours expended, however, claiming as follows:

> (a) many of the time entries are not related to the enforcement of the terms of the Participation Agreement as required by Section 14 of the contract, including all time spent by counsel researching and analyzing its Breach of Fiduciary Duty and Conversion claims;

---

whether the FDIC rightfully and legally transferred the Participation Agreement without first allowing Defendant its right of first refusal was not before the Court. (ECF No. 36, P. 7).  The Court therefore rejects Defendant's attempt to revive the argument here.

(b) several of Plaintiff's time entries are not related to this case but, rather, time was spent monitoring a companion case involving Defendant;

(c) Plaintiff should not be paid any of its attorneys' fees after August 23, 2011, when Defendant agreed in writing to recognize Plaintiff as the Participant under the Participation Agreement; and

(d) all attorneys' fees incurred after Defendant's Confession of Judgment on September 13, 2011, were unnecessary and unreasonable because Defendant, in good faith, tried to recognize Plaintiff as the Participant under the Participation Agreement.

(Id., PP. 4-5). The Court will consider Defendant's contentions in turn.

### A. Time Spent On Fiduciary Duty And Conversion Claims

Upon consideration, the Court agrees Plaintiff should not be reimbursed for time spent by counsel researching and analyzing its breach of fiduciary duty and conversion claims, for two reasons. First, the Participation Agreement limits recovery to fees incurred in connection with the negotiation and execution of the Agreement, and the fiduciary duty and conversion claims appear to be separate and distinct from claims relating strictly to the Participation Agreement. More importantly, the Court notes Plaintiff did not prevail on its fiduciary duty and conversion claims, but rather dismissed them voluntarily. (See ECF No. 58). The Court therefore will disallow the following entries:

| Work Date | Attorney | Billed Hours | Billed Dollars | Narrative |

| 2/7/2011 | Wade Early | 2.7 | 499.50 | Work on preparation of demand letter and preparation of Federal Court complaint; Analyze issues regarding additional claims for conversion and breach of fiduciary duty; Correspondence with client regarding same.[3] |
|---|---|---|---|---|
| 2/28/2011 | Wade Early | 3.7 | 684.50 | Research Federal law and analyze issues regarding "actual direct compensatory damage" claimed by BBStL and calculation for same; Work on preparation of claims for Breach of Fiduciary Duty and Conversion; Forward same to client for review. |
| 6/15/2011 | Wade Early | 4.2 | 777.00 | Analyze issues regarding elements of all asserted claims. |

---

[3] At times, Plaintiff failed to give sufficient detail in its entries to permit the Court to determine the amount of time devoted to the various Counts of the Complaint. In those circumstance, the Court has disallowed the entire entry, because the onus was on Plaintiff to provide evidence of the hours worked. See Wheeler, 348 F.3d at 754.

| Date | Name | Hours | Amount | Description |
|---|---|---|---|---|
| 8/31/2011 | Wade Early | .6 | 111.00 | Review scheduling order and analyze issues regarding additional claims for breach of fiduciary duty and breach of participation agreement. |
| 9/8/2011 | Wade Early | 1.0 | 185.00 | Review participation agreement and analyze issues regarding claim for breach of fiduciary duty. |
| 9/17/2011 | Wade Early | 2.6 | 481.00 | Research state and federal law regarding contract and fiduciary duties applicable to participation agreements; Analyze claim regarding same. |
| 9/18/2011 | Wade Early | 2.4 | 444.00 | Research Missouri law regarding contract requirements of good faith and fair dealing and fiduciary duties created by participation agreement. Work on argument in support of same. |

| 9/20/2011 | Wade Early | 1.8 | 333.00 | Work on preparation of Memorandum in support of claims for breach of contract and fiduciary duties. |
| 9/21/2011 | Wade Early | .8 | 148.00 | Finalize memorandum regarding claims and forward same to client. |
| 9/29/2011 | Wade Early | 1.2 | 222.00 | Work on preparation of letter to L. Parres regarding fiduciary duty claims. |

The Court thus will deduct a total of $3,885.00 from Plaintiff's requested fees.

**B.     Time Spent On Review of Beal Bank Lawsuit**

Upon consideration, the Court agrees Plaintiff should not be reimbursed for time spent by counsel monitoring an alleged companion case involving Defendant. The Court therefore will disallow the following entries:

| Work Date | Attorney | Billed Hours | Billed Dollars | Narrative |
|---|---|---|---|---|
| 3/29/2011 | Wade Early | .9 | 166.50 | Review action on similar participation agreement filed by Beal Bank against BBStL; Correspondence with client regarding same. |

| 6/14/2011 | Wade Early | 1.7 | 314.50 | Review motion to dismiss filed by Beal Bank in companion case; Analyze issues regarding same; Correspondence with client regarding same and issues regarding solvency of BBStL and their escrow of payments. |
| 8/18/2011 | Wade Early | 1.7 | 314.50 | Analyze issues in consideration of Beal Bank companion case; E-mail correspondence and telephone call with client; Analyze strategy for proceeding; Review order on Beal Bank's motion to dismiss and analyze possible collateral estoppel or other legal effect it may have on our Motion for Summary Judgment. |

| 9/22/2011 | Wade Early | .4 | 74.00 | Review and analyze pleadings and application of Beal Bank companion case to pending action. |
| 9/23/2011 | Wade Early | .2 | 37.00 | Analyze issues in Beal Bank Matter. |
| | | | | |

The Court thus will deduct a total of $906.50 from Plaintiff's requested fees.

### C. Settlement Offer/Confession Of Judgment

Defendant finally asserts it should not be required to pay attorneys' fees incurred after (a) Defendant's August 23, 2011, offer to recognize Plaintiff as the Participant under the Participation Agreement, or (b) Defendant's September 13, 2011, Confession of Judgment. Upon consideration the Court will reject this assertion, as the case was not resolved through either of those maneuvers, nor did either offer encompass the full extent of relief eventually obtained by Plaintiff.

The Court therefore will grant Plaintiff's Motion Requesting Attorney Fees in part, in accordance with the foregoing.

## II. Costs

Plaintiff further requests a total of $719.73, as reimbursement for costs expended in connection with this matter. (See ECF No. 39-2, P. 9). Upon consideration the Court will disallow the requested costs, for failure to provide documentation in support.

### CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Bank of Commerce's Motion Requesting Attorney Fees and Costs (ECF No. 39) is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that Plaintiff's Motion Requesting Attorney Fees and Costs is **GRANTED** to the extent that the Court will order Defendant to pay attorneys' fees in the amount of $31,165.90. Plaintiff's motion is **DENIED** in all other respects.

Dated this  9th  day of March, 2012.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE